# Cincinnati, New Orleans & Texas Pacific Railway Company v. Heinz.

(Decided December 7, 1926.)

## Appeal from Boyle Circuit Court.

1. Negligence—Plaintiff is Confined in His Proof to Negligence Specified.—Where plaintiff specifies negligence causing injury, he is confined in his proof to such negligence, and could not recover upon any other ground.

2. Trial—Instructions Must Conform to Pleadings.—Instructions submitting an issue not presented in pleadings is unauthorized, since instructions must conform to pleadings.

3. Master and Servant—Instruction Submitting Issue Whether Switch Stand was so Near Track as to Endanger Trainmen Held Unauthorized Error, where Pleadings Alleged Failure to Light Switch Stand (Federal Employers' Liability Act [U. S. Comp. Stats., Sections 8657-8665]).—In suit by railroad switchman under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657-8665), for injuries alleged to have been caused by railroad company's negligence in having switch stand unlighted, instruction submitting issue whether switch stand was so near to track as to endanger lives of trainmen riding on side of cars held reversible error as unauthorized by pleading, since plaintiff did not allege that.

NELSON D. RODES, CHAS. H. RODES and EDWARD COLSTON for appellant.

LEWIS L. WALKER and HENRY JACKSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a $2,500.00 judgment for personal injuries rendered in an action brought under the federal Employers' Liability Act.

The facts are these: In January, 1923, appellee was a member of appellant's switching crew in its yards at Oakdale, Tennessee. He was forty years of age, five feet ten inches high, and had been in the railroad business for a number of years. Previous to the accident he had worked for appellant as conductor and also as night yardmaster at Danville. At the time of the accident he had been working at Oakdale for about nine days. In the Oakdale yards there are many switch tracks and switches, and each switch has a switchstand. These switchstands, including the one with which appellee claims to have come in contact, are 24 inches high without a lantern and

27 inches high with a lantern, and stand three and one-half feet from the nearer rail. Only the switchstands used in connection with the track from the main line to the roundhouse are equipped with lanterns. According to appellee there were lamps on some of the switches on the lead tracks. On the night of the accident appellee went to work at ten p. m. Shortly after midnight he was engaged in working upon a freight train that had come in from the south. A cut of freight cars was being pushed south by the switch engine on the lead track. Appellee's foreman instructed him to cut off the last car and ride it into the local switch track. To accomplish this he got on the east side of the north end of the car furthest south. Attached to this car was a cut-off lever, which permits the couplers to separate when the proper switch track is reached. While standing with his left foot in the stirrup and his right foot either in the stirrup or on the brace of the stirrup, and holding with his left hand to the second grabiron from the bottom, which is about four feet higher than the stirrup, he pushed the cut-off lever up from below in order to make the cut and rode in this position for possibly five or ten car lengths. Appellee claims that at the time he received the signal from his foreman the car had passed him and it was necessary for him to grab hold of the end of the car in such a position as to require him to push up the lever instead of pulling it up as he could have done had he gotten on the car in time. He also claims that when he pushed up the lever it ought to have released the brake automatically, but there was a loose chain in the connection and it was necessary for him to hold up the lever until the brake released the car. For this reason he was compelled to remain in the position which he took when he got on the car. While standing in this position he says that his rectum came in contact with an unlighted switchstand. The top of the switchstand, which was about an inch square, did not penetrate his rectum, but caused his clothes to be jammed up there. He was not knocked from the car, but rode the car through the switch. When he was struck he thought both his back and neck were broken. It felt to him like the blood was running down both legs. He could feel it just as hot as anything, but of course it was not there. He suffered a great deal from the injury. He continued in the performance of his duties during the night and was compelled to work from 6:30 a. m. the next morning until 2:30 p. m. Imme-

diately after the accident he walked back about 15 car lengths and had two of the crew examine him. He left the hospital a year and a half before he testified and had not improved any since. Mr. W. F. DeLong testified that he knew appellee prior to January 28, 1923, and what little he saw of him he looked like a man in good health. In February or March, 1924, appellee was employed as his assistant at a tobacco warehouse, and he was then physically unfit for labor.

On the other hand, the testimony for appellant is in substance as follows: Dr. Galion, the company's physician at Oakdale, examined appellee's rectum on Monday, the day following the injury. He observed no evidence of any injury of any kind, and if appellee had been injured as claimed, there would have been a manifestation of it on the buttocks that protect the rectum. He did not examine appellee internally. Dr. Ransohoff, who examined appellee in Cincinnati on February 21, 1923, and Dr. Little, who made X-ray photographs at the time, testified that they could find no evidence of the injury which appellee claims was sustained at Oakdale in the month of April, 1923. Dr. Hanes, a distinguished surgeon and specialist in rectal troubles, who examined appellee on April 11, 1923, and treated him thereafter for about six months at the Norton Infirmary, diagnosed appellee's trouble as movable coccyx, diseased condition of the terminal bowel. He examined appellee closely and was unable to discover any evidence of a physical injury. Dr. W. E. Gardner, who examined appellee on August 5, 1923, at the request of Dr. Hanes, states that he could find no evidence of any injury to the rectum. Dr. Fayette Dunlap testified that the accident could not have happened in the way claimed by appellee without marked evidence of the injury itself. Appellant's trainmaster testified that the proper position for a switchman to take while riding on a freight car was to place both feet in the stirrup, hold to the third grabiron from the bottom with his left hand and operate the cut-off lever with his right hand. The two switchmen who examined appellee immediately after the accident both testified that they looked at his rectum, and saw no evidence of any bruise, cuts or blood, or anything of that kind. Two or three witnesses stated that it was physically impossible for a man to get his rectum down so low that he could collide with a switchstand, and that, if the switchman was holding the cut-off lever up

at the time, his rectum would clear the switchstand at least 21 inches. There was also evidence by trainmen, who had made a test of the matter, that it was physically impossible for a man to raise the cut-off lever if he was hanging from the second grabiron of the ladder, but that he would have to be higher up on the ladder in order for his arm to be in a position to enable him to lift the lever.

There was evidence that appellant was engaged and appellee was employed in interstate commerce at the time of his injury. After alleging that it was usual and customary and was the duty of defendant to have and maintain a light on the switchstand at night, and that he was on the side of the car for the purpose of cutting off the car and switching it to another train, and was engaged in holding up the lever for that purpose, the petition contains the following averments:

"And while so engaged, on the side of the car, he was struck by the staff on the switchstand, which staff ought to have had a light on it, but which was unlighted, and there was no light on said staff, and the defendants negligently and carelessly failed to have a light upon said staff, and by reason of its being unlighted, the plaintiff was unable to discover it, and while on the side of said car for said purpose and while said car was moving he struck said staff and said staff struck him and he was injured.

"Plaintiff further states that by reason of the carelessness and negligence of the defendants in failing to have said staff lighted, the said staff struck him in the back and rectum and spine with great force and his rectum and spine and legs and thighs, hips and back were greatly injured thereby," etc.

In addition to instructions on the measure of damages, contributory negligence, assumed risk, etc., the court gave the following instruction:

"No. 1. If you believe from the evidence in this case the plaintiff, Edward Hines, was employed in interstate commerce and the defendant, Cincinnati, New Orleans and Texas Pacific Railway Company, was engaged in interstate commerce, and that plaintiff was in the line of his duty at the time of his alleged injuries, if any, on about January 28, 1923,

and that the defendant, Cincinnati, New Orleans and Texas Pacific Railway Company, negligently maintained a switchstand in its yard where plaintiff was working in such close proximity to the car on which he was riding so as to cause it not to be a reasonably safe place to work and as to endanger his being struck while riding on said car while performing his duty as switchman and by reason of said negligence, if any, in so maintaining said switchstand the plaintiff was struck and thereby injured you will find for plaintiff; unless you so believe, from the evidence, you will find for the defendant.''

It is the rule in this state that the injured party may prove any act of negligence under a petition pleading negligence in general terms, but where he specifies the negligence complained of he is confined in his proof to such negligence and cannot recover upon any other ground. It is also the rule that instructions should conform to the pleadings, and that an instruction submitting an issue not presented in the pleadings is not authorized. Lexington Ry. Co. v. Britton, 130 Ky. 676, 114 S. W. 295; Daniel Boone Coal Co. v. Turner, 181 Ky. 756, 205 S. W. 931. Here the petition did not allege that the switchstand was so near to the track as to endanger the lives of trainmen riding on the side of the cars, but alleged only that the switchstand was unlighted and by reason thereof appellee was injured. As the court did not instruct on the last issue, but submitted only the issue first mentioned, it is at once apparent that the instruction submitted to the jury an issue not made by the pleadings. That this was error there can be no doubt.

This conclusion makes it unnecessary to determine whether, if the negligence submitted had been properly pleaded, the evidence was sufficient to take the case to the jury or sustain the verdict, or to decide any other questions raised on the appeal.

Judgment reversed and cause remanded for a new trial consistent with this opinion.